```
 1                    UNITED STATES OF AMERICA
                    UNITED STATES DISTRICT COURT
 2                  SOUTHERN DISTRICT OF CALIFORNIA

 3                            - - -

 4                  HONORABLE THOMAS J. WHELAN
                UNITED STATES DISTRICT JUDGE PRESIDING
 5                            - - -

 6   UNITED STATES OF AMERICA,  )
                               )
 7           PLAINTIFF,        )
                               )
 8   VS.                       ) NO. 09CR1250W
                               )
 9   SHAWNDREA DORROUGH,        )
     DWAYNE TOUSANT,           )
10                             )
             DEFENDANTS.       )
11   _____)

12

13                       SENTENCING

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS
                       JUNE 2, 2010
15                  SAN DIEGO, CALIFORNIA

16

17

                MELISSA A. PIERSON, CSR 12499, RPR
18               FEDERAL OFFICIAL COURT REPORTER
                  940 FRONT STREET, ROOM 3155
19               SAN DIEGO, CALIFORNIA 92101
                    PH:  (619)702-7508
20               PIERSON1121@SBCGLOBAL.NET

21

22

23

24

25
```

```
 1    APPEARANCES OF COUNSEL:

 2    ON BEHALF OF PLAINTIFF:
                KAREN P. HEWITT
 3              UNITED STATES ATTORNEY
                BY:  MR. STEVE MILLER, ESQ.
 4              ASSISTANT UNITED STATES ATTORNEYS
                880 FRONT STREET
 5              FIFTH FLOOR
                SAN DIEGO, CA 92101
 6
      ON BEHALF OF DEFENDANT DORROUGH:
 7              MS. JAMI FERRARA, ESQ.
                964 FIFTH AVENUE
 8              ST. 335
                SAN DIEGO, CA 92101
 9              (619) 239-4344

10
      ON BEHALF OF DEFENDANT TOUSANT:
11              MR. PAUL W. BLAKE, JR., ESQ.
                4045 BONITA ROAD
12              ST. 202
                BONITA, CA 91902
13              (619) 908-6429

14

15

16

17

18

19

20

21

22

23

24

25
```

1          SAN DIEGO, CALIFORNIA; WEDNESDAY, JUNE 2, 2010

2                              - - -

3              (COURT IN SESSION AT 9:00 A.M.)

4          MADAM CLERK:  CASE NO. 09CR1250, UNITED STATES OF

5    AMERICA VERSUS SHAWNDREA DORROUGH AND DWAYNE TOUSANT.

6          MR. FORGE:  GOOD MORNING, YOUR HONOR.  JASON FORGE

7    AND ALESSANDRA SERANO FOR THE UNITED STATES.

8          THE COURT:  GOOD MORNING.

9          MR. BLAKE:  GOOD MORNING, YOUR HONOR.  PAUL BLAKE

10   ON BEHALF OF MR. TOUSANT, WHO'S IN CUSTODY AND NOT PRESENT.

11   HE WILL BE HERE MOMENTARILY.

12         THE COURT:  GOOD MORNING, SIR.  MR. TOUSANT IS NOW

13   PRESENT.  THIS MATTER IS ON CALENDAR FOR SENTENCING.

14   MR. BLAKE, DO YOU WAIVE ARRAIGNMENT FOR JUDGMENT AND

15   SENTENCE?

16         MR. BLAKE:  YES, YOUR HONOR, WE DO.

17         THE COURT:  IS THERE ANY LEGAL CAUSE NOT TO

18   PROCEED?

19         MR. BLAKE:  NO, YOUR HONOR.

20         THE COURT:  BY WAY OF BACKGROUND, I HAVE READ AND

21   CONSIDERED THE PRESENTENCE REPORT, THE PLEA AGREEMENT, THE

22   GOVERNMENT'S SENTENCING MEMORANDUM, THE GOVERNMENT'S

23   SENTENCING SUMMARY CHART, THE DEFENDANT'S SENTENCING

24   MEMORANDUM ALONG WITH THE ATTACHMENTS AND REQUEST FOR

25   DEPARTURES.  THE DEFENDANT'S OBJECTION TO THE PRE-SENTENCE

1    REPORT.  THE DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM.

2         BY WAY OF TENTATIVE, I WOULD GRANT THE GOVERNMENT'S

3    MOTION FOR A THIRD LEVEL OFF FOR ACCEPTANCE OF

4    RESPONSIBILITY.  WITH REGARD TO THE PROBATION DEPARTMENT'S

5    SUGGESTED UPWARD ADJUSTMENT FOR UNLAWFUL RESTRAINT OR

6    DISMISSAL OF UNCHARGED CONDUCT, I WOULD NOT IMPOSE EITHER OF

7    THOSE ON THE BASIS THE GOVERNMENT HAS THE BURDEN OF PROOF IN

8    THAT AREA.  THEY DIDN'T SEEK IT IN THEIR PLEA AGREEMENT, NOR

9    DO THEY SEEK IT IN THEIR SENTENCING MEMORANDUM OR SENTENCING

10   SUMMARY CHART.

11         WITH REGARD TO THE ADJUSTMENT FOR CUSTODY CREDITS,

12   MY TENTATIVE WOULD BE TO AGREE.  HE HAS SPENT SOME TIME

13   ALREADY DUE TO THE SAME CONDUCT IN THIS CASE, SPECIFICALLY

14   THE KIDNAPING CHARGE THAT MR. TOUSANT WAS CHARGED WITH IN

15   STATE COURT.  HOWEVER, I DISAGREE WITH THE AMOUNT OF CUSTODY

16   THAT THE DEFENDANT IS REQUESTING.  THEY WERE ARRESTED ON THIS

17   BECAUSE OF THIS INCIDENT ON SEPTEMBER 30TH, OF 2008.  ON

18   DECEMBER 19TH, OF 2008, THEY WERE REBOOKED ON THE ROBBERY

19   CARJACKING CHARGES, WHICH HE EVENTUALLY PLEAD GUILTY AND BOTH

20   HAVE RECEIVED PRISON SENTENCES.  I THINK THEY ARE ENTITLED,

21   BASICALLY, TO THREE MONTHS CREDIT THEY HAVE THERE.  I DON'T

22   THINK THEY ARE ENTITLED TO ADDITIONAL CREDITS AS THEY WERE

23   HELD ON THE UNRELATED CHARGES TO WHICH HE WAS SUBSEQUENTLY

24   CONVICTED ON A GUILTY PLEA.

25         HOWEVER, I ALSO AGREE WITH THE PROBATION DEPARTMENT

1   THAT BECAUSE THE CUSTODY -- EXCUSE ME, THE INCIDENTS IN BOTH

2   THE STATE CARJACKING ROBBERY CHARGES, AS WELL AS THIS

3   INCIDENT IN THIS PARTICULAR CASE ALL TOOK PLACE IN A SHORT

4   PERIOD OF TIME, BASICALLY A TWO-MONTH PERIOD OF TIME, AUGUST

5   AND SEPTEMBER 2008.  I THINK THERE SHOULD BE SOME RECOGNITION

6   OF THAT AMOUNT OF CONCURRENT TIME GIVEN AS SUGGESTED BY THE

7   PROBATION DEPARTMENT.  IT WOULD BE MY TENTATIVE TO GIVE 15

8   MONTHS, RUN 15 MONTHS OF THE SENTENCE CONCURRENT BASED ON

9   BOTH THE CUSTODY FOR THE CONDUCT THAT HE HAD -- CUSTODY TIME

10  HE SPENT FOR THE CONDUCT IN THIS CASE IN STATE COURT, ALONG

11  WITH THE FACT IT WAS A SHORT PERIOD OF ABERRANT BEHAVIOR AS

12  FAR AS MR. TOUSANT GOES.

13          WITH REGARD TO THE FACT THAT MR. BLAKE RAISES THAT

14  HIS CLIENT WAS WILLING TO TESTIFY AND HAD BEEN CONTACTED AS A

15  POSSIBLE WITNESS AT TRIAL OF MR. JONES, SHOULD IT BECOME

16  NECESSARY TO TESTIFY AS A REBUTTAL WITNESS, SINCE HE DIDN'T

17  TESTIFY, OBVIOUSLY THE GOVERNMENT IS UNDER NO OBLIGATION

18  WHATSOEVER TO MAKE A 5(K)(1) MOTION.  I UNDERSTAND WHY THAT

19  WASN'T DONE.  ON THE OTHER HAND, MR. TOUSANT DID PLEAD GUILTY

20  IN HIS CASE, AND WAS WILLING TO TESTIFY.  HE DID SAVE

21  JUDICIAL RESOURCES BY PLEADING GUILTY AND NOT LITIGATING ANY

22  MOTIONS FILED.  IT WOULD BE MY TENTATIVE TO GIVE A TWO-LEVEL

23  DOWNWARD ADJUSTMENT FOR A COMBINATION OF MITIGATING FACTORS.

24          WITH REGARD TO MR. BLAKE'S SUGGESTION THAT THERE

25  WOULD BE A DISPARITY IN SENTENCE BASED ON THE SENTENCE

 1   RECEIVED BY MR. CHRIS BLACK AND MR. JOE ARNOLD, I RESEARCHED

 2   THEIR PARTICULAR CASES AND THEY ARE SIGNIFICANTLY DIFFERENT.

 3   FIRST, THE BASE OFFENSE LEVELS WERE DIFFERENT.  THEY WERE

 4   UNDER THE 2006 GUIDELINES, THE BASE OFFENSE LEVEL WAS 24.

 5   MOST SIGNIFICANTLY THEY BOTH HAD 5(K) MOTIONS BROUGHT BY THE

 6   GOVERNMENT.  THE GOVERNMENT IS NOT BRINGING A 5(K) MOTION

 7   WITH REGARD TO MR. TOUSANT.  AND THEY ARE BOTH A CRIMINAL

 8   HISTORY CATEGORY OF ONE, NOT A CRIMINAL HISTORY CATEGORY

 9   THREE, AS IS MR. TOUSANT.

10        I AGREE WITH THE GOVERNMENT THAT THE LOW END OF THE

11   ADJUSTED GUIDELINE RANGE IS A SUFFICIENT SENTENCE BUT NOT

12   GREATER THAN NECESSARY.  THE LOW END IS 180 MONTHS.  THE

13   MANDATORY MINIMUM APPLIES.  THE MANDATORY MINIMUM IS 120

14   MONTHS.  I WOULD RUN 15 MONTHS CONCURRENT WITH THE STATE

15   SENTENCE, 120 MONTHS CONSECUTIVE.

16        WITH THAT ALL BY WAY OF A TENTATIVE, I WILL LISTEN

17   TO EVERYBODY.

18        MR. BLAKE:  THANK YOU VERY MUCH.  I RECOGNIZE WITH

19   RESPECT TO THE CUSTODY CREDITS WE MAY BE, IT SOUNDS LIKE, MAY

20   BE A FEW MONTHS OFF BASED ON WHAT I WAS PROPOSING, AND I

21   BELIEVE WHAT CO-COUNSEL, DEFENDANT'S COUNSEL ALSO IS

22   PROPOSING.

23        IT'S JUST THAT THE CONTEXT OF THIS WHOLE THING,

24   THEY WERE NEVER OUT OF CUSTODY DURING ANY OF THIS PERIOD OF

25   TIME.  AND THE IRONIC THING IS, WHICH IS WHY I BELIEVE THE

1  POINT IS, THEY WERE ARRESTED ON THIS PARTICULAR MATTER

2  SEPTEMBER 30.  THEY WERE IN CONTINUOUS CUSTODY.  THE OFFENSE

3  TO WHICH ULTIMATELY THEY REACHED A RESOLUTION BEFORE JUDGE

4  HERNANDEZ IN STATE COURT WAS RESOLVED MAY 21, 2009.  THAT

5  RELATED BACK TO AN INCIDENT IN EARLY AUGUST.

6         THE COURT:  THEY WERE BOOKED ON THAT CHARGE

7  DECEMBER 19, 2008.

8         MR. BLAKE:  THAT'S CORRECT, YOUR HONOR.  BUT THE

9  ACTUAL ALLEGED CONDUCT -- THERE WERE LAW ENFORCEMENT ISSUES

10  THAT DID NOT ARISE UNTIL THAT DECEMBER.  HOWEVER, I BELIEVE

11  THE COURT HAS CONSIDERABLE AUTHORITY WITH RESPECT TO

12  EXERCISING ITS AUTHORITY.  I APPRECIATE WHAT THE COURT'S

13  DONE.

14         I DO, HOWEVER, WOULD ASK THE COURT TO PERHAPS

15  RECONSIDER ITS POSITION WITH RESPECT TO MY PROPOSAL WITH

16  RESPECT TO JUST A SLIGHT DOWNWARD DEPARTURE WITH RESPECT TO

17  THAT AND WOULD GET US INTO AN AREA, I THINK, IS MORE

18  APPROPRIATE.

19         AND ALSO, I DIDN'T HEAR IF THE COURT'S TENTATIVE --

20  WHAT ITS POSITION WAS WITH RESPECT TO WHETHER IT WOULD BE

21  CONCURRENT OR CONSECUTIVE WITH THE STATE?  JUDGE HERNANDEZ

22  ALREADY INDICATED HIS INCLINATION WHEN HE WAS SENTENCED MAY

23  21, 2009.

24         THE COURT:  I BELIEVE I STATED I WOULD RUN 15

25  MONTHS CONCURRENT, 105 MONTHS CONSECUTIVE.

1           MS. FERRARA:  YOUR HONOR, THE ISSUE WITH THE COUNTY

2    TIME DOES PLAY A ROLE WITH MS. DORROUGH.  I WOULD LIKE TO

3    POINT OUT ONE OF THE THINGS ON BEHALF OF MR. TOUSANT AND

4    MS. DORROUGH.  I UNDERSTAND YOUR POSITION.  THEY WERE

5    ARRESTED ON SEPTEMBER 30TH, AND BOOKED ON A NEW CASE ON

6    DECEMBER 19TH.  AND IF THAT WAS THE ISSUE, AND THERE WAS NO

7    MORE KIDNAPING CASE ON DECEMBER 19TH, I'D AGREE WITH YOU

8    COMPLETELY.  HOWEVER, THE KIDNAPING CASE CONTINUED --

9           THE COURT:  IT WASN'T UNTIL APRIL OF '09.  I'M

10   AWARE OF THAT.

11          MR. BLAKE:  THAT'S CORRECT.

12          MS. FERRARA:  SO, THEY WERE IN CUSTODY ON BOTH

13   CASES UNTIL APRIL.  THE POINT I MADE IN MY PAPERS, AND I'M

14   SURE YOUR HONOR IS AWARE HAVING SERVED ON THE STATE BENCH,

15   WHEN THEY WERE SENTENCED ON MAY 21ST, SENTENCED ON BOTH

16   CASES, IT'S VERY LIKELY THE COURT WOULD HAVE RUN BOTH CASES

17   CONCURRENT.  FOR SOME REASON, THE SECOND CASE, THE CASE THAT

18   HAD CONDUCT EARLIER BUT WAS CHARGED IN DECEMBER, HAD BEEN

19   DISMISSED, THEN THEY STILL WOULD HAVE BEEN IN CUSTODY, AT

20   LEAST UNTIL APRIL, ON THE KIDNAPING CASE.  I DO THINK, JUST

21   GIVING CREDIT FOR SEPTEMBER TO DECEMBER, IT DOESN'T

22   COMPLETELY ADDRESS THE AMOUNT OF TIME THEY WERE IN CUSTODY ON

23   THIS EXACT SAME CONDUCT.

24          THE COURT:  WELL, IF I GAVE THEM ANOTHER FOUR

25   MONTHS CREDIT, I STILL WOULDN'T GIVE THEM MORE THAN 15 MONTH

1   CREDIT.  IT MAKES IT SOUND BETTER TO GIVE THEM SEVEN MONTHS

2   CREDIT FOR CUSTODY, AND ANOTHER EIGHT MONTHS FOR THE SHORT

3   TIME SPREE AND THEY WOULD STILL COME OUT WITH 15 MONTHS

4   CREDIT, AS FAR AS I'M CONCERNED.

5             MS. FERRARA:  I UNDERSTAND.  I JUST WANTED TO MAKE

6   THAT POINT.

7             MR. BLAKE:  YOUR HONOR, AGAIN, ADDRESSING

8   MS. FERRARA'S COMMENTS, IT IS IRONIC JUST HOW THIS WHOLE

9   THING HAPPENED.  I APPRECIATE THE COURT'S COMMENTS EARLIER

10  WITH RESPECT TO MS. EDITH AS PART OF HER SUBSTANCE ABUSE

11  ISSUES.  DRINKING WAS HEAVILY INVOLVED IN THIS PARTICULAR

12  INCIDENT, AND I DO THINK THAT FORTUNATELY THE CONDUCT, AS IN

13  THE JORDAN EXAMPLE, DID NOT GO ANYWHERE NEAR AS FAR AND

14  NEITHER MR. TOUSANT OR MS. DORROUGH WERE ACTUALLY INVOLVED IN

15  THE WHOLE SCALE TRAFFICKING EVENT AS THOSE TWO INDIVIDUALS

16  WERE.  ON THAT BASIS, YOUR HONOR, I THANK THE COURT.

17            THE COURT:  MR. FORGE OR MS. SERANO?

18            MR. FORGE:  THANK YOU, YOUR HONOR.  YOUR HONOR, FOR

19  THE RECORD, IN TERMS OF MR. TOUSANT'S WILLINGNESS TO TESTIFY,

20  JUST SO YOUR HONOR KNOWS, WE DID MEET WITH THEM BEFORE TRIAL.

21  HE DOWNPLAYED HIS OWN CULPABILITY TO SUCH AN EXTENT THAT WE

22  DIDN'T THINK WE WOULD EVER CALL HIM AS A WITNESS UNLESS IT

23  WAS FOR SOMETHING VERY DISCRETE.  WE THOUGHT THERE WAS A

24  POSSIBILITY THAT MR. JONES MIGHT ARGUE THAT MR. TOUSANT HAD

25  USED HIS CELL PHONE AND SENT THOSE TEXT MESSAGES.  THAT WAS

1    THE ONLY LIMITED TYPE OF TESTIMONY WE WOULD HAVE EVEN

2    CONSIDERED USING HIM FOR.  HE WAS COMPLETELY UNCOOPERATIVE IN

3    TERMS OF BEING FORTHCOMING REGARDING HIS OWN CULPABILITY

4    REGARDING THE INCIDENT.

5         THE COURT:  I DON'T FAULT YOU.

6         MR. FORGE:  I JUST WANTED TO MAKE SURE -- I'M NOT

7    TRYING TO HOLD THAT AGAINST HIM.

8         THE COURT:  I'M NOT HOLDING IT AGAINST THE

9    GOVERNMENT EITHER.  I UNDERSTAND THAT COMPLETELY.

10        MR. FORGE:  OKAY.  IN TERMS OF MR. BLAKE REFERRING

11   TO, I THINK, HE ATTRIBUTED TO THE COURT SOME NOTION THAT THIS

12   INCIDENT WAS RELATED TO SUBSTANCE ABUSE, I DIDN'T HEAR THAT

13   IN YOUR HONOR'S TENTATIVE.  THERE IS NO SUBSTANCE ABUSE ISSUE

14   THAT CONTRIBUTED TO THIS INCIDENT.  MR. TOUSANT WAS INVOLVED

15   IN PROSTITUTION, THE PROSTITUTION TRADE, WELL BEFORE THIS

16   INCIDENT.  HE WAS ALSO INVOLVED IN PROSTITUTING UNDERAGE

17   FEMALES BEFORE THIS INCIDENT.  SO, THIS WAS NOT --

18        DEFT'S. MOTHER:  NO, HE WASN'T.

19        MR. FORGE:  THIS WAS NOT AN ABERRATION IN HIS LIFE

20   HISTORY.  IT WAS NOT SOMETHING THAT OCCURRED AS A RESULT OF

21   HIM ABUSING SUBSTANCES.  THIS WAS A VERY INTENTIONAL AND

22   VOLUNTARY ACT.  AND I WOULD POINT OUT THAT MR. TOUSANT

23   DEMANDED MORE MONEY FROM THE VICTIM THAN ANYBODY ELSE THAT

24   EVENING.  HE DEMANDED THAT SHE EARN THEM $5,000, WHICH IS

25   MORE THAN ANYBODY ELSE DEMANDED.

1      IN TERMS OF THE CARJACKING INCIDENT, WE ARE

2  PERFECTLY COMFORTABLE WITH YOUR HONOR'S TENTATIVE REGARDING

3  THE AMOUNT OF CONCURRENT TIME.  JUST TO BUTTRESS YOUR

4  HOLDING, I WOULD JUST POINT OUT THEY ARE COMPLETELY SEPARATE

5  CRIMES.  MR. TOUSANT WAS FAR AND AWAY THE MOST CULPABLE

6  REGARDING THE CARJACKING INCIDENTS, AND HE IS THE ONE WHO

7  ACTUALLY ASSAULTED THE VICTIMS.  AND IN A SENSE, HE HAS

8  ALREADY RECEIVED A FORM OF CONCURRENT TIME FOR THOSE

9  INCIDENTS BECAUSE THERE WERE THREE SEPARATE ROBBERIES THAT

10 HAD ALL BEEN ROLLED INTO ONE SENTENCE.

11      SO, WITH THAT, YOUR HONOR, I'M HAPPY TO ANSWER ANY

12 QUESTIONS THAT YOUR HONOR WOULD HAVE, BUT WE WOULD SUBMIT.

13      THE COURT:  MR. TOUSANT, IS THERE ANYTHING YOU WANT

14 TO SAY, SIR?  YOU DON'T HAVE TO SAY ANYTHING.  IT'S UP TO

15 YOU.

16      MR. BLAKE:  BEFORE MR. TOUSANT SAYS ANYTHING, MAY I

17 RESPOND BRIEFLY?

18      THE COURT:  SURE.

19      MR. BLAKE:  YOUR HONOR, THE ISSUE WAS THAT WE

20 WEREN'T GOING TO GET INTO THIS IN ANY WHOLE SCALE, BUT WE DID

21 SIT DOWN WITH THE GOVERNMENT.  I DID FILE AN OBJECTION TO A

22 PORTION OF THE LANGUAGE THAT GOT TRANSLATED INTO THE PS&R

23 WHERE THIS ALLEGED ACTIVITY ON THE PART OF THESE TWO

24 DEFENDANTS, THEY WERE CERTAINLY AWARE OF CERTAIN ACTIVITIES

25 BECAUSE THEY HAD REASON TO KNOW BECAUSE SOME OF THE PEOPLE

1    WERE INVOLVED.  THEY PERSONALLY WERE NOT INVOLVED, AND I

2    OBJECTED TO THAT AND I JUST WANT TO MAKE THAT CLEAR.

3    WE ALSO TRIED TO MAKE THAT CLEAR IN OUR DISCUSSIONS WITH THE

4    GOVERNMENT.

5            SO, AND THEN, I ALSO MADE CLEAR IN MY EARLIER

6    PAPERS FILED IN JANUARY, THAT THERE WAS A CONSIDERABLE AMOUNT

7    OF DRINKING GOING ON DURING THIS ENTIRE EPISODE.  THERE WAS

8    DRINKING GOING ON UP -- ALL THROUGH THIS PERIOD OF TIME IN

9    MR. TOUSANT'S LIFE, AND IT WAS NOT THAT KIND OF ACTIVITY.  I

10   JUST WANTED TO MAKE SURE THE COURT IS AWARE OF THAT.

11           THE COURT:  I HEARD THE TRIAL, SO I'M AWARE OF

12   THAT.  GO AHEAD, MR. TOUSANT.

13           DEFT. TOUSANT:  YOUR HONOR, I BARELY MET

14   MR. JONES -- JANUARY OF 2008, AND PREVIOUS TO THAT I NEVER

15   EVEN -- I WOULD NEVER BE INVOLVED WITH THE PROSTITUTION OR

16   ANYTHING THAT HAS TO DO WITH IT.  I ONLY GOT INVOLVED WITH

17   THAT WHEN IT WAS -- WHEN HE OFFERED ME MONEY TO DRIVE HIM

18   AROUND.  I NEVER REALLY PAID ANY ATTENTION TO WHAT THE MAN

19   WAS DOING.  I HAD MY OWN THING.  I WAS WORKING AT THE TIME.

20   MY SON WAS TWO YEARS OLD.  I HAD TO TAKE CARE OF THAT LITTLE

21   MAN.  I HAD TO TAKE CARE OF MS. DORROUGH, RIGHT HERE

22   (INDICATING).  I HAD TO TAKE CARE OF MY MOM.  I HAD TO TAKE

23   CARE OF DAMN NEAR MY WHOLE FAMILY.  I WAS WORKING, GOING TO

24   SCHOOL.  I WAS TAKING CARE OF WHAT I HAD TO DO.  I WAS

25   CURRENTLY ENROLLED IN SCHOOL.  I WAS GOING TO WORK EVERY DAY.

1   I BUILD CARS.  I WORK ON CARS FOR A LIVING.  THAT'S WHAT I

2   DO.  I DON'T HAVE ANY TYPE OF PROSTITUTION PREVIOUS TO THIS.

3           THE COURT:  IF IT MAKES YOU FEEL ANY BETTER,

4   MR. TOUSANT, I BELIEVE I'M ONLY SENTENCING YOU ON THE CONDUCT

5   YOU PLEAD GUILTY TO.  I'M NOT SENTENCING YOU, HANGING YOU OUT

6   WITH MR. JONES OR ANYTHING YOU MAY OR MAY NOT HAVE DONE IN

7   THE PAST.  DON'T WORRY ABOUT THAT.  I WANT TO MAKE SURE YOU

8   UNDERSTAND THAT.

9           DEFT. TOUSANT:  YES, SIR.

10          THE COURT:  ANYTHING FURTHER, MR. BLAKE OR

11  MR. FORGE?

12          MR. FORGE:  NO, YOUR HONOR.  THANK YOU.

13          MR. BLAKE:  NO, YOUR HONOR.  THANK YOU.

14          THE COURT:  IN THIS MATTER, THE COURT FINDS THE

15  PLEA AGREEMENT DOES COMPLY WITH THE PROVISIONS OF SECTION

16  6(B)1.2 OF THE SENTENCING GUIDELINES.  IT DOES ADEQUATELY

17  REFLECT THE SERIOUSNESS OF THE OFFENSE AND WILL NOT UNDERMINE

18  THE STATUTORY PURPOSES OF SENTENCING.

19          FOR ADVISORY PURPOSES UNDER THE GUIDELINES THE BASE

20  OFFENSE LEVEL IS 30.  AFTER I ADJUST THAT UPWARDS TWO LEVELS

21  FOR THE USE OF A COMPUTER, AND FURTHER ADJUST UPWARDS TWO

22  LEVELS BECAUSE OF UNDER-THE-INFLUENCE, I WOULD GRANT THE

23  GOVERNMENT'S MOTION FOR A THIRD LEVEL FOR ACCEPTANCE OF

24  RESPONSIBILITY PURSUANT TO SECTION 3(E)1.1.  I WOULD DEPART

25  TWO LEVELS PURSUANT TO GUIDELINE SECTION 5(K)2.20 FOR THE

1   SAVING OF JUDICIAL RESOURCES, THAT I ALREADY EXPLAINED ON THE

2   RECORD EARLIER.

3           THAT GIVES ME AN ADJUSTED OFFENSE LEVEL OF 29, A

4   CRIMINAL HISTORY SCORE OF FIVE, A CRIMINAL HISTORY CATEGORY

5   OF THREE.  AS A RESULT, THE GUIDELINE RANGE IS FROM 108 TO

6   135 MONTHS.  MINDFUL OF THE FACT THAT THE STATUTORY MAXIMUM

7   FOR THIS OFFENSE IS UP TO LIFE IN PRISON, AND THERE IS A

8   MANDATORY MINIMUM OF 120 MONTHS IN PRISON, AND CONSIDERING

9   THE CRITERIA SET FORTH IN TITLE 18, SECTION 3553(A), I FIND

10  THAT THE MANDATORY MINIMUM APPLIES.

11          THEREFORE, PURSUANT TO THE SENTENCING REFORM ACT OF

12  1984, IT WOULD BE THE JUDGMENT AND SENTENCE OF THIS COURT

13  THAT THE DEFENDANT BE AND HEREBY IS COMMITTED TO THE CUSTODY

14  OF THE BUREAU OF PRISONS FOR A TERM OF IMPRISONMENT OF 120

15  MONTHS, 15 MONTHS OF THAT TO RUN CONCURRENT WITH THE SENTENCE

16  IMPOSED IN THE STATE CASE, NO. SCS-225068, 105 MONTHS TO RUN

17  CONSECUTIVE.

18          FOLLOWING YOUR RELEASE FROM CUSTODY, SIR, YOU WOULD

19  BE ON SUPERVISED RELEASE, DOES THE GOVERNMENT AGREE TO A TERM

20  OF FIVE YEARS, WOULD THAT BE SUFFICIENT SINCE HE IS ON A

21  LIFETIME REGISTRATION OFFENSE?

22          MR. FORGE:  YES.

23          THE COURT:  I WILL IMPOSE SUPERVISED RELEASE FOR A

24  PERIOD OF FIVE YEARS.

25          I WILL IMPOSE ALL THE STANDARD TERMS AND CONDITIONS

1    OF SUPERVISION AND THE FOLLOWING SPECIAL CONDITIONS.

2              FIRST, YOU ARE TO REPORT ALL VEHICLES THAT YOU OWN

3    OR OPERATE, OR IN WHICH YOU HAVE AN INTEREST TO YOUR

4    SUPERVISING PROBATION OFFICER.

5              YOU ARE TO RESOLVE ANY OUTSTANDING WARRANTS YOU

6    MIGHT HAVE WITHIN 60 DAYS OF YOUR RELEASE FROM CUSTODY.

7              YOU ARE TO SUBMIT TO A SEARCH OF YOUR PERSON,

8    PROPERTY, PLACE OF RESIDENCE, VEHICLE, AND PERSONAL EFFECTS

9    WHENEVER REQUESTED TO DO SO, AT A REASONABLE TIME AND

10   REASONABLE MANNER BY A LAW ENFORCEMENT OFFICER OR PROBATION

11   OFFICER.

12             YOU ARE TO COMPLETE THE SEX OFFENDER EVALUATION

13   PROGRAM THAT MAY INCLUDE PERIODIC PSYCHOLOGICAL OR

14   PHYSIOLOGICAL TESTING AND COMPLETION OF THE ABEL ASSESSMENT

15   AT THE DIRECTION OF THE SUPERVISING PROBATION OFFICER.

16             YOU ARE NOT TO HAVE UNSUPERVISED CONTACT WITH ANY

17   CHILD UNDER THE AGE OF 18 WITHOUT BEING IN THE PRESENCE OF A

18   SUPERVISING ADULT OR WITH THE PRIOR APPROVAL OF YOUR

19   PROBATION OFFICER.

20             DON'T HAVE CONTACT DIRECT OR INDIRECTLY,

21   TELEPHONICALLY, VISUALLY, VERBALLY, OR THROUGH WRITTEN

22   MATERIALS OR THIRD-PARTY COMMUNICATION WITH THE VICTIM OR THE

23   VICTIM'S FAMILY WITHOUT THE APPROVAL OF YOUR PROBATION

24   OFFICER.

25             DON'T ASSOCIATE WITH OR HAVE ANY CONTACT WITH ANY

1  SEX OFFENDERS OTHER THAN IN AN APPROVED TREATMENT COUNSELING

2  SETTING.

3          YOU ARE NOT TO BE EMPLOYED OR PARTICIPATE IN ANY

4  VOLUNTEER ACTIVITY THAT INVOLVES CONTACT WITH CHILDREN UNDER

5  THE AGE OF 18 EXCEPT UNDER CIRCUMSTANCES APPROVED IN ADVANCE

6  AND IN WRITING BY YOUR PROBATION OFFICER.

7          DON'T ACCEPT OR COMMENCE EMPLOYMENT WITHOUT PRIOR

8  APPROVAL OF YOUR PROBATION OFFICER.

9          EMPLOYMENT IS TO BE SUBJECT TO AND CONTINUED

10  THROUGH AND ASSESSED BY THE PROBATION DEPARTMENT.  YOU SHALL

11  CONSENT TO THIRD PARTY DISCLOSURE TO ANY EMPLOYER, POTENTIAL

12  EMPLOYER, CONCERNING ANY RESTRICTIONS IMPOSED BY THE COURT

13  HERE TODAY.

14          YOU ARE TO RESIDE IN A RESIDENCE APPROVED IN

15  ADVANCE BY YOUR PROBATION OFFICER.  ANY CHANGE IN RESIDENCE

16  SHALL BE PRE-APPROVED BY YOUR PROBATION OFFICER.  AND CONSENT

17  TO THE INSTALLATION OF SYSTEMS THAT WILL ENABLE THE PROBATION

18  OFFICER TO MONITOR COMPUTER USE ON ANY COMPUTER OWNED OR

19  CONTROLLED BY YOU.  I DON'T THINK WE NEED THAT IN THIS CASE.

20  THERE WAS NO COMPUTER INVOLVED HERE.

21          MR. FORGE:  THERE WAS, MR. TOUSANT'S COMPUTER WAS

22  USED TO POST --

23          THE COURT:  THERE WAS?  OKAY.  CONSENT TO THE

24  INSTALLATION OF SYSTEMS THE WILL ENABLE THE PROBATION OFFICER

25  TO MONITOR COMPUTER USE OR COMPUTERS OWNED OR CONTROLLED BY

1    YOU.

2            THE STATUTORY FINE IS NOT IMPOSED DUE TO YOUR

3    INABILITY IT PAY.  I WILL IMPOSE A MANDATORY SPECIAL

4    ASSESSMENT OF $100.  I WILL ORDER THAT YOU PAY RESTITUTION IN

5    THE AMOUNT OF $2,160, JOINT AND SEVERAL LIABILITY WITH YOUR

6    CO-DEFENDANT, MS. DORROUGH, TO THE CLERK OF THE US DISTRICT

7    COURT TO REIMBURSE THE CALIFORNIA VICTIM COMPENSATION CLAIMS

8    BOARD FOR THE (INAUDIBLE) OF THE VICTIM.  THAT IS TO BE PAID

9    THROUGH THE INMATE FINANCIAL RESPONSIBILITY PROGRAM AT A RATE

10   OF $25 PER QUARTER DURING INCARCERATION, AND ANY BALANCE

11   REMAINING FOLLOWING HIS RELEASE FROM CUSTODY TO BE PAID AT A

12   RATE OF $100 OR MORE PER MONTH.

13           GOOD LUCK TO YOU, MR. TOUSANT.

14           MR. FORGE:  YOUR HONOR, IN LIGHT OF THE COURT'S

15   SENTENCE, I WOULD POINT OUT MR. TOUSANT HAS WAIVED ALL

16   APPELLATE RIGHTS AND THE GOVERNMENT MOVES TO DISMISS THE

17   REMAINING COUNTS AGAINST HIM.

18           THE COURT:  IS THAT CORRECT, MR. BLAKE?

19           MR. BLAKE:  YOUR HONOR, I BELIEVE THAT TECHNICALLY

20   THAT'S CORRECT.  HOWEVER, MR. TOUSANT MAY WANT TO DISCUSS

21   MAYBE ONE OR TWO SMALL ISSUES WITH ME.  THAT WOULD MAKE FOR

22   DISCUSSION AT ANOTHER TIME, THAT IS CORRECT.

23           MR. FORGE:  THANK YOU, YOUR HONOR.

24           THE COURT:  THE GOVERNMENT'S MOTION IS GRANTED.

25           MS. FERRARA?

1           MS. FERRARA:  YES, YOUR HONOR.

2           THE COURT:  YOUR CLIENT'S MATTER IS ON CALENDAR FOR

3  SENTENCING, DO YOU WAIVE ARRAIGNMENT FOR JUDGMENT AND

4  SENTENCE?

5           MS. FERRARA:  YES, YOUR HONOR.

6           THE COURT:  IS THERE ANY LEGAL CAUSE NOT TO PROCEED

7  IN HER CASE?

8           MS. FERRARA:  NO.

9           THE COURT:  BY WAY OF BACKGROUND, I HAVE READ AND

10  CONSIDERED THE PRE-SENTENCE REPORT, THE PLEA AGREEMENT, THE

11  DEFENDANT'S SENTENCING MEMORANDUM, THE GOVERNMENT'S

12  SENTENCING MEMORANDUM, THE GOVERNMENT'S SENTENCING LETTER,

13  THAT I WILL ORDER FILED UNDER SEAL, AND THE DEFENDANT'S

14  OBJECTION TO THE PRE-SENTENCE REPORT.

15           BY WAY OF A TENTATIVE, THE FACT THAT THERE IS A

16  PROPOSAL TO CHANGE THE GUIDELINES, THAT IS NOT OF ANY MOMENT

17  TO ME.  AT THE TIME OF SENTENCING, I'M REQUIRED, BY LAW, TO

18  USE THE GUIDELINES IN EFFECT AT THE TIME OF SENTENCE.  THE

19  FACT THERE MAY BE SOME ADJUSTMENT AT A FUTURE TIME, TO THE

20  GUIDELINES, IS NOT APPROPRIATE FOR ME TO CONSIDER.

21           SPECIFICALLY, WHAT I'M TALKING ABOUT ARE THE

22  GUIDELINES THERE MAY BE A PROPOSAL TO AMEND THE GUIDELINES TO

23  GET RID OF THE ONE POINT UPWARD ENHANCEMENT FOR BEING

24  RELEASED FROM CUSTODY WITHIN TWO YEARS OF THE COMMISSION OF A

25  NEW OFFENSE.

1       I'D GRANT THE GOVERNMENT'S MOTION FOR A THIRD LEVEL

2    OFF FOR ACCEPTANCE OF RESPONSIBILITY.

3       WITH REGARD TO THE 5(K)(1) DEPARTURE THE GOVERNMENT

4    SUGGESTS, I WOULD GRANT THAT.  BUT QUITE FRANKLY, I THINK I

5    WILL GIVE HER AN ADDITIONAL LEVEL, I WILL GIVE HER SEVEN

6    LEVELS OFF, DIRECTLY AS A RESULT OF HER TESTIMONY MS. WILLIS

7    PLEAD GUILTY ON THE MORNING OF TRIAL.  AND SHE, OF COURSE,

8    DID TESTIFY AT TRIAL, AND SIGNIFICANTLY, I FOUND HER

9    TESTIMONY TO BE VERY CREDIBLE.  I WILL GIVE HER AN ADDITIONAL

10   LEVEL OFF FOR THE 5(K).

11      I HAVE NO OBJECTION TO RECOMMENDING THE 500-HOUR

12   DRUG TREATMENT PROGRAM.

13      WITH REGARD TO CUSTODY FOR STATE CREDITS, AS WE

14   DISCUSSED ALREADY WITH REGARD TO THE CO-DEFENDANT, I'M AWARE

15   OF THE FACT SHE WAS ARRESTED ON THE FACTUAL BASIS FOR THIS

16   CASE ON SEPTEMBER 30, 2008.  I'M AWARE SHE THAT WAS

17   RE-ARRESTED OR REBOOKED ON DECEMBER 19, 2008, ON AN UNRELATED

18   ROBBERY/CARJACKING CASE, TO WHICH SHE WOULD HAVE SUBSEQUENTLY

19   BEEN CONVICTED BY WAY OF A GUILTY PLEA.

20      I'M AWARE OF THE PRELIMINARY HEARING IN STATE COURT

21   WITH REGARD TO THE UNDERLYING CHARGES AND THAT WASN'T HEARD

22   UNTIL APRIL 2009, AT WHICH TIME SHE WAS DISCHARGED, ALONG

23   WITH HER CO-DEFENDANT, ON THE KIDNAPING CHARGE.  THE INSTANT

24   OFFENSE WAS RE-FILED IN FEDERAL COURT.  SO, SHE WOULD GET

25   APPROXIMATELY THREE MONTHS CREDIT FOR THE TIME THAT SHE HAD

1    RECEIVED ON THIS CASE IN STATE COURT, WHICH SHE WOULD NOT

2    OTHERWISE RECEIVE CREDIT.

3            AS I INDICATED WITH MR. TOUSANT, I AGREE WITH THE

4    PROBATION DEPARTMENT THE CRIME SPREE IN THIS CASE, AS WELL AS

5    THE UNRELATED STATE CASE, TOOK PLACE OVER A SHORT PERIOD OF

6    TIME, BASICALLY TWO MONTHS, AUGUST/SEPTEMBER OF 2008.  AND

7    FOR THAT REASON I WOULD TENTATIVELY RUN A PORTION OF THIS

8    SENTENCE CONCURRENT WITH THE STATE CASE.

9            THE CO-DEFENDANT'S SUPERVISED RELEASE TERM OF FIVE

10   YEARS IS SUFFICIENT BECAUSE OF THE OFFENSE WHICH HE PLEAD

11   GUILTY IS A LIFETIME REGISTRATION OFFENSE.

12           THE LOW END OF THE GUIDELINE RANGE WOULD BE A

13   SUFFICIENT SENTENCE, AS SUGGESTED BY THE GOVERNMENT.  THE LOW

14   END, BY MY CALCULATIONS, WOULD BE 92 MONTHS.  I WOULD RUN 15

15   MONTHS CONCURRENT, 77 MONTHS CONSECUTIVE.  I WILL LISTEN TO

16   EVERYBODY.

17           MS. FERRARA:  THANK YOU, YOUR HONOR.  THE ONE THING

18   THAT I WOULD NOTE ABOUT THE AMENDMENT TO -- THE PROPOSED

19   AMENDMENT TO THE SENTENCING GUIDELINES, I UNDERSTAND THAT YOU

20   ARE NOT OBLIGATED AT ALL TO NOT -- TO DISREGARD THAT BECAUSE

21   IT IS A PROPOSAL.  BUT I DO THINK THERE ARE OTHER MEANS TO

22   TAKE INTO ACCOUNT.

23           FOR MS. DORROUGH, THIS DOES MAKE A BIG DIFFERENCE.

24   IT CHANGES HER FROM A CRIMINAL HISTORY CATEGORY FIVE TO A

25   CRIMINAL HISTORY CATEGORY OF FOUR.  AND I THINK THE REASONS

1    UNDERLYING THE SENTENCING COMMISSIONS RECOMMENDATION TO

2    DELETE 4(A)1.1(E), ARE SOMETHING THAT YOU CAN CONSIDER UNDER

3    3553(A), AND ANYTHING ELSE THAT YOU CAN CONSIDER.

4              ACCORDING TO THE SENTENCING COMMISSIONS GENERALLY

5    ARE NOT AN INDICATOR OF ANYTHING.  THEY DO NOT SLOW -- THEY

6    ARE NOT DETERRENT IN ANY WAY.  THEY OFTEN ARE TAKING INTO

7    ACCOUNT SOMETHING THAT'S ALREADY CONSIDERED IN OTHER

8    GUIDELINES.  SO, I THINK, AT LEAST FOR MS. DORROUGH, WHERE IT

9    MAKES SUCH A BIG DIFFERENCE, WHEN YOU DEPARTED DOWN TO A

10   LEVEL 24 IN A CRIMINAL HISTORY CATEGORY FIVE, IT'S 92 MONTHS,

11   WHEREAS IN A CATEGORY FOUR IT'S 77 MONTHS.  IT DOES MAKE A

12   SIGNIFICANT DIFFERENCE.  AND SO, I DO THINK THERE ARE

13   ALTERNATIVE MEANS FOR YOU TO RECOGNIZE THAT RECENCY POINTS

14   ARE NOT VALID AND THAT IT'S VERY LIKELY ON NOVEMBER 1, 2010,

15   THAT THEY WILL NO LONGER BE A PART OF THE GUIDELINES.

16             AS TO THE AMOUNT OF CREDIT SHE SHOULD GET, THE 611

17   DAYS THAT I'VE ASKED FOR, I UNDERSTAND YOUR REASONING AND WE

18   TALKED ABOUT THAT, BUT I WOULD CONTINUE TO LODGE MY BELIEF

19   SHE SHOULD GET 611 DAYS CREDIT FOR THAT.

20             IN TERMS OF WHO MS. DORROUGH IS, AND THE PERSON

21   STANDING BEFORE YOU, I THINK THIS IS ONE OF THOSE RARE

22   INSTANCES WHERE YOU ACTUALLY HAD A CHANCE TO LISTEN TO HER,

23   AND HEAR HER, AND SEE HER DEMEANOR, AND GET TO KNOW HER A

24   LITTLE BIT IN THE WAY YOU NORMALLY DON'T WHEN SOMEONE PLEADS

25   GUILTY AND IS SENTENCED.

1          THE PERSON THAT I WANT YOUR HONOR TO KNOW IS THE

2     PERSON WHO HAS HAD VERY LITTLE CHANCES IN HER LIFE.  SHE IS

3     22 YEARS OLD.  IN MY SENTENCING MEMO I THINK YOU CAN SEE THAT

4     FROM A VERY YOUNG AGE MS. DORROUGH WAS NOT GIVEN A CHANCE.

5     NOT GIVEN A CHANCE BY HER FAMILY.  SHE WAS NOT TREATED WELL

6     AT ALL.  SHE WAS RAPED TWICE BY THE TIME SHE WAS 17 YEARS

7     OLD.  THE FIRST TIME HER MOTHER DIDN'T BELIEVE HER.  AND AS

8     YOUR HONOR CAN SEE, HER MOTHER IS NOT HERE.  HER MOTHER HAS

9     NOT BEEN TO A SINGLE HEARING.  HISTORICALLY SHE HASN'T SEEN

10    HER SINCE SEPTEMBER 2008, I BELIEVE.

11         SHE IS SOMEONE WHO, IN MANY WAYS, I THINK, WAS KIND

12    OF TOSSED ASIDE BY SOCIETY, AND AS A RESULT, SHE HAS MADE

13    SOME VERY BAD DECISIONS, AND SOME CRIMINAL DECISIONS, AND

14    THINGS SHE DEFINITELY SHOULD BE PUNISHED FOR, AND IN NO WAY

15    MEAN TO SAY SHE SHOULD BE DISSOLVED OF ALL GUILT FOR

16    ANYTHING.  BUT I DO THINK THAT WHEN YOU LOOK AT HOW SHE GOT

17    TO WHERE SHE GOT AT THE AGE OF 22, THAT THIS IS THE TIME THAT

18    I THINK THAT WE CAN LOOK AT HER AND SAY, YOU HAVE A CHANCE

19    WHEN YOU GET OUT, TO DO THINGS RIGHT, AND I THINK SHE DOES.

20    AND SHE STARTED TO DO THAT WHEN SHE PARTICIPATED IN THIS CASE

21    AND HELPED THE GOVERNMENT, AND TESTIFIED AND TOLD THE TRUTH

22    ABOUT WHAT HAPPENED.

23         I DO THANK YOU, YOUR HONOR, FOR RECOGNIZING HER

24    ROLE IN HELPING TO RESOLVE THE CASE FOR MS. WILLIS AND HELP

25    TO EXPLAIN THE FACTS TO THE JURY.  THE GOVERNMENT POINTS OUT

1    IT WAS BECAUSE OF MS. DORROUGH'S TESTIMONY THAT THE VICTIM

2    WAS NOT NECESSARY AND SPARED THE VICTIM PROBABLY A VERY

3    UNCOMFORTABLE TIME IN COURT.

4             BUT I DO WANT TO POINT OUT IN SOME WAYS,

5    MS. DORROUGH HAS BEEN A VICTIM FOR MUCH OF HER LIFE, AND IS

6    TRYING VERY HARD TO NOT BE A VICTIM ANY MORE.  SHE HAS PLANS

7    FOR WHEN SHE GETS OUT.  SHE AND MR. TOUSANT PLAN TO GET

8    MARRIED.  THEY ARE NOT ALLOWED TO MARRY WHILE IN THE BOP

9    CUSTODY, BUT THEY HAVE BEEN TOGETHER FOR MANY YEARS.  AND

10   THEY DO INTEND TO CONTINUE THEIR RELATIONSHIP AND HOPEFULLY

11   THAT WILL BE A STABLE ENVIRONMENT FOR THE TWO OF THEM.  THEY

12   BOTH KNOW THEY WILL BE ON SUPERVISED RELEASE, THEY CAN'T

13   SCREW UP ANY MORE, AND THIS WAS THEIR LAST SHOT, BASICALLY,

14   AT GETTING IT RIGHT.

15            SO, YOUR HONOR, I WOULD ASK YOU TO FOLLOW MY

16   RECOMMENDATION, WHICH AFTER MY, VERY HOPEFULLY CORRECT, MATH

17   AND MY SENTENCING MEMORANDUM LAID OUT, THAT I THINK SHE

18   SHOULD GET A SENTENCE OF 63.6 MONTHS IN CUSTODY, AND YOU RUN

19   IT CONCURRENT TO HER STATE SENTENCES.  I UNDERSTAND WHAT YOU

20   HAVE STATED EARLIER, BUT I DO WANT TO SET THAT FORTH AS MY

21   POSITION.

22            THE COURT:  CERTAINLY.  MR. FORGE.

23            MR. MAZZA:  THANK YOU, YOUR HONOR.  YOUR HONOR, WE

24   HAVE NO QUARREL WHATSOEVER IN THE ADDITIONAL LEVEL FOR

25   MS. DORROUGH.  I AGREE WITH YOUR HONOR'S COMMENTS

1    WHOLE-HEARTEDLY.  I THINK SHE WAS EXTREMELY CREDIBLE, AND IT

2    WAS A VERY BIG STEP FOR HER TO TAKE TO BE WILLING TO TESTIFY,

3    AND IT DID INFLUENCE NOT ONLY MS. WILLIS' DECISION, BUT I

4    THINK IT'S CLEAR IT HAD A BIG IMPACT ON THE JURY AS WELL.

5              I DO THINK THAT SHE IS AT THE OPPOSITE END OF THE

6    SPECTRUM FROM MR. TOUSANT IN TERMS OF LIFE AND THE

7    DIFFICULTIES SHE HAD IN HER LIFE.  I DON'T USUALLY STAND UP

8    IN FRONT OF YOUR HONOR AND MAKE PITCHES FOR CONSIDERING

9    DIFFICULTY DEFENDANTS HAVE ENCOUNTERED, BUT I DO THINK MS.

10   DORROUGH IS IN AN UNUSUAL SITUATION, IN LIGHT OF HOW YOUNG

11   SHE IS, AND HOW MANY VERY SIGNIFICANT DIFFICULTIES SHE HAS

12   HAD TO OVERCOME THROUGHOUT HER LIFE.  SO, I DO, AS I TOLD MS.

13   FERRARA, I DON'T IN ANY WAY OBVIOUSLY CONDONE OR EXCUSE THE

14   CHOICES THAT MS. DORROUGH HAS MADE, BUT I DO RECOGNIZE THAT

15   SHE HAS HAD A VERY DIFFICULT LIFE.  AND SHE IS STILL A VERY

16   YOUNG WOMAN.  SHE IS VERY INTELLIGENT.  SHE HAS A LOT OF

17   POTENTIAL, AND I HOPE WHATEVER TIME SHE RECEIVES IN CUSTODY

18   SHE MAKES THE MOST OUT OF IT.  I REALLY DO THINK SHE HAS

19   POTENTIAL TO BE A PRODUCTIVE MEMBER OF SOCIETY WHEN SHE GETS

20   OUT.

21             THE COURT:  BEFORE I HEAR FROM MS. DORROUGH, IF YOU

22   DON'T OBJECT, I COULD RUN A LITTLE MORE CONCURRENT.

23             MR. FORGE:  I WON'T OBJECT.

24             THE COURT:  27 MONTHS CONCURRENT.

25             MR. FORGE:  IN LIGHT OF THE DIFFERENCE BETWEEN THE

1    TWO DEFENDANTS, YOUR HONOR, I THINK THAT WOULD BE

2    APPROPRIATE.

3            THE COURT:  I'M SURE YOU DON'T OBJECT TO THAT,

4    MS. FERRARA?

5            MS. FERRARA:  NO, YOUR HONOR.

6            THE COURT:  MS. DORROUGH, IS THERE ANYTHING YOU

7    WOULD LIKE TO SAY?  YOU DON'T HAVE TO SAY ANYTHING, BUT YOU

8    CAN IF YOU WANT TO.

9            DEFT. DORROUGH:  NO.

10           THE COURT:  OKAY.  MS. DORROUGH, LET ME TELL YOU, I

11   MEANT WHAT I SAID.  I THOUGHT YOU MADE A VERY CREDIBLE

12   WITNESS.  I THINK YOU TURNED YOUR LIFE AROUND.  I HOPE YOU

13   CONTINUE IN YOUR DIRECTION AND GOD WILLING YOU HELP

14   MR. TOUSANT DO THE SAME AS WELL, AT SOME POINT, OKAY?

15           DEFT. DORROUGH:  OKAY.

16           THE COURT:  ANYTHING FURTHER, COUNSEL?

17           ALL COUNSEL:  NO.

18           THE COURT:  THE COURT FINDS THE PLEA AGREEMENT DOES

19   COMPLY WITH THE PROVISIONS OF SECTION 6(B)1.2 OF THE

20   SENTENCING GUIDELINES, IT DOES ADEQUATELY REFLECT THE

21   SERIOUSNESS OF THE OFFENSE AND WILL NOT UNDERMINE THE

22   STATUTORY PURPOSES OF SENTENCING.

23           FOR ADVISORY PURPOSES UNDER THE GUIDELINES, THE

24   BASE OFFENSE LEVEL IS 20.  BECAUSE OF THE OFFENSE INVOLVED

25   THE USE OF A COMPUTER, THE BASE OFFENSE LEVEL IS INCREASED BY

1   TWO, PURSUANT TO GUIDELINE SECTION 2(G)1.3(B)(2)(B), THE BASE

2   OFFENSE LEVEL IS INCREASED AN ADDITIONAL TWO.  I WOULD GRANT

3   THE GOVERNMENT'S MOTION FOR A THIRD LEVEL OFF FOR ACCEPTANCE

4   OF RESPONSIBILITY PURSUANT TO GUIDELINE SECTION 3(E)1.1.  I

5   WOULD GRANT THE GOVERNMENT'S MOTION FOR A 5(K)(1) DEPARTURE.

6   I WILL MAKE THAT SEVEN LEVELS.

7           THAT GIVES ME AN ADJUSTED OFFENSE LEVEL OF 24, A

8   CRIMINAL HISTORY SCORE OF TEN, A CRIMINAL HISTORY CATEGORY OF

9   FIVE.  THE RESULTING ADVISORY GUIDELINE RANGE IS FROM 92 TO

10  115 MONTHS.  MINDFUL OF THE FACT THAT THE STATUTE FOR THIS

11  OFFENSE IS UP TO LIFE IN PRISON, AND REVIEWING THE CRITERIA

12  SET FORTH IN TITLE 18, SECTION 3553(A), I AGREE WITH THE

13  GOVERNMENT'S RECOMMENDATION THAT THE LOW END OF THE ADJUSTED

14  GUIDELINE IS A SUFFICIENT SENTENCE BUT NOT GREATER THAN

15  NECESSARY.

16          THEREFORE, PURSUANT TO THE SENTENCING REFORM ACT OF

17  1984, IT WOULD BE THE JUDGMENT AND SENTENCE OF THIS COURT

18  THAT THE DEFENDANT BE AND HEREBY IS COMMITTED TO THE CUSTODY

19  OF THE BUREAU OF PRISONS FOR A TERM OF IMPRISONMENT OF 92

20  MONTHS, 27 MONTHS OF THAT TO RUN CONCURRENT WITH CASE

21  NO. SCS-225068, 65 MONTHS TO RUN CONSECUTIVE.

22          I WILL ALSO RECOMMEND TO THE BUREAU OF PRISONS THAT

23  SHE BE CONSIDERED FOR THEIR LONG-TERM 500 HOUR DRUG TREATMENT

24  PROGRAM.

25          FOLLOWING YOUR RELEASE FROM CUSTODY, MA'AM, YOU

1    WOULD BE ON SUPERVISED RELEASE FOR A PERIOD OF FIVE YEARS.  I

2    WILL IMPOSE ALL THE STANDARD TERMS AND CONDITIONS OF

3    SUPERVISION AND THE FOLLOWING SPECIAL CONDITIONS.

4              FIRST, YOU ARE TO PARTICIPATE IN A PROGRAM OF DRUG/

5    ALCOHOL ABUSE TREATMENT, INCLUDING URINALYSIS TESTING AND

6    COUNSELING, AS DIRECTED BY YOUR SUPERVISING PROBATION

7    OFFICER.

8              YOU ARE TO REPORT ALL VEHICLES THAT YOU OWN OR

9    OPERATE, IN WHICH YOU HAVE AN INTEREST TO YOUR SUPERVISING

10   PROBATION OFFICER.

11             YOU ARE TO SUBMIT TO A SEARCH OF YOUR PERSON,

12   PROPERTY, PLACE OF RESIDENCE, VEHICLE, PERSONAL EFFECTS

13   WHENEVER REQUESTED TO DO SO BY A PROBATION OFFICER OR LAW

14   ENFORCEMENT OFFICER AT A REASONABLE TIME AND REASONABLE

15   MANNER.

16             YOU ARE TO COMPLETE A SEX OFFENDER EVALUATION WHICH

17   MAY INCLUDE PERIODIC PSYCHOLOGICAL AND PHYSIOLOGICAL TESTING

18   AND COMPLETION OF AN ABEL ASSESSMENT AS DIRECTED BY YOUR

19   SUPERVISING PROBATION OFFICER.

20             YOU ARE NOT TO HAVE ANY UNSUPERVISED CONTACT WITH A

21   CHILD UNDER THE AGE OF 18, UNLESS IN THE PRESENCE OF A

22   SUPERVISING ADULT AND WITH PRIOR APPROVAL OF YOUR PROBATION

23   OFFICER.

24             YOU ARE NOT TO HAVE ANY CONTACT, DIRECT OR

25   INDIRECT, TELEPHONIC, VISUALLY, VERBAL, WRITTEN MATERIAL, OR

1    ANY THIRD PARTY COMMUNICATION WITH THE VICTIM, THE VICTIM'S

2    FAMILY WITHOUT THE APPROVAL OF THE PROBATION OFFICER.

3           DON'T ASSOCIATE WITH OR HAVE CONTACT WITH SEX

4    OFFENDERS UNLESS IN AN APPROVED TREATMENT OR COUNSELING

5    SESSION.

6           YOU ARE NOT TO BE EMPLOYED OR PARTICIPATE IN ANY

7    VOLUNTEER ACTIVITY THAT INVOLVES CONTACT WITH CHILDREN UNDER

8    THE AGE OF 18 EXCEPT IN CIRCUMSTANCES APPROVED IN ADVANCE AND

9    IN WRITING BY YOUR PROBATION OFFICER.

10          YOU ARE NOT TO ACCEPT OR COMMENCE EMPLOYMENT UNLESS

11   YOU HAVE PRIOR APPROVAL OF YOUR PROBATION OFFICER.

12   EMPLOYMENT IS SUBJECT TO A REVIEW AND ASSESSMENT OF YOUR

13   PROBATION OFFICER.

14          YOU ARE NOT TO CONSENT TO THIRD PARTY DISCLOSURE TO

15   ANY EMPLOYER, POTENTIAL EMPLOYER, CONCERNING ANY RESTRICTIONS

16   THAT ARE IMPOSED BY THE COURT IN ITS ORDER TODAY.

17          YOU SHALL RESIDE IN A RESIDENCE APPROVED IN ADVANCE

18   BY THE PROBATION OFFICER, AND ANY CHANGES IN YOUR RESIDENCE

19   MUST BE PRE-APPROVED BY YOUR PROBATION OFFICER.

20          YOU SHALL CONSENT TO THE INSTALLATION OF SYSTEMS

21   THAT WILL ENABLE THE PROBATION OFFICER TO MONITOR COMPUTER

22   USE ON ANY COMPUTER OWNED OR CONTROLLED BY -- IN HER CASE, I

23   DON'T THINK WE NEED THAT, DO WE?

24          MR. FORGE:  SHE DID, ASSIST.  I DON'T THINK SHE IS

25   GOING TO BE A RECIDIVIST, YOUR HONOR, BUT FACTUALLY SHE DID

1    ASSIST WITH THE COMPUTER.

2           THE COURT:  I WILL DELETE CONDITION 12 WITH REGARD

3    TO HER.  I ASSUME THERE IS NO OBJECTION TO THAT, MS. FERRARA?

4           MS. FERRARA:  NO, YOUR HONOR.

5           THE COURT:  STATUTORY FINES WILL NOT BE IMPOSED DUE

6    TO HER INABILITY TO PAY.  I WILL IMPOSE A SPECIAL ASSESSMENT

7    OF $100.

8           I WILL ORDER YOU PAY RESTITUTION JOINT AND

9    SEVERALLY LIABLE WITH YOUR CO-DEFENDANTS IN THE AMOUNT OF

10   $2,160 TO THE CLERK OF THE UNITED STATES DISTRICT COURT, TO

11   THE CALIFORNIA VICTIM COMPENSATION AND GOVERNMENT CLAIMS

12   BOARD, YOU ARE TO REIMBURSEMENT THEM COUNSELING REQUIRED BY

13   THE VICTIM.

14          YOU WILL PAY AT THE RATE OF $25 PER QUARTER DURING

15   THE PERIOD OF INCARCERATION.  PAYMENT OF THE REMAINING

16   BALANCE WILL BE MADE FOLLOWING YOUR RELEASE FROM CUSTODY AT A

17   RATE OF $100 OR MORE PER MONTH.  GOOD LUCK TO YOU, MA'AM.

18          MS. FERRARA:  THANK YOU, YOUR HONOR.

19          MR. FORGE:  JUST FOR THE RECORD, AS WITH THE CASE

20   WITH MR. TOUSANT, IN LIGHT OF THE COURT'S SENTENCE,

21   MS. DORROUGH HAS WAIVED ANY RIGHT TO APPEAL OR COLLATERALLY

22   ATTACK HER SENTENCE AND CONVICTION, AND THE GOVERNMENT MOVES

23   TO DISMISS THE REMAINING COUNTS.

24          THE COURT:  IS THAT CORRECT, MS. FERRARA?

25          MS. FERRARA:  IT IS CORRECT, YOUR HONOR.

1          THE COURT:  GOVERNMENT'S MOTIONS ARE GRANTED.

2               (WHICH WERE ALL THE PROCEEDINGS

3          HELD IN THE ABOVE-ENTITLED CAUSE.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

COUNTY OF SAN DIEGO          )

                             )  SS.

STATE OF CALIFORNIA          )

I, MELISSA A. PIERSON, OFFICIAL COURT REPORTER, REGISTERED

PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, DO HEREBY

CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE FOREGOING

PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET FORTH;

THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY

MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER

CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY

STENOGRAPHIC NOTES.


DATE: 10-26-10


**S:/MELISSA A. PIERSON**

MELISSA A. PIERSON, CSR 12499 RPR

FEDERAL OFFICIAL COURT REPORTER